Eugene MURPHY et al.

v.

PHILADELPHIA HOUSING
AUTHORITY et al.

Civ. A. No. 83-4466.

United States District Court,
E.D. Pennsylvania.

Jan. 8, 1985.

Harold R. Berk, Philadelphia, Pa., for plaintiff.

Arthur W. Lefco, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by elderly and handicapped residents of the Emlen Arms apartment development against the Philadelphia Housing Authority (PHA) and its Executive Director and Director of Operations. The Emlen Arms is a public housing development (limited to occupancy by elderly and handicapped persons) which is owned and operated by the PHA. The complaint alleged, *inter alia*, that the defendants had denied the plaintiffs their rights to free speech, assembly, and association under the First and Fourteenth Amendments to the Constitution by preventing persons who were not residents of Emlen Arms from attending meetings organized by tenants at Emlen Arms for the purpose of discussing housing problems. The plaintiffs' verified complaint was filed on September 14, 1983, together with a motion for a preliminary injunction. The plaintiffs sought declaratory and injunctive relief in addition to damages, and sought to enjoin the PHA from prohibiting the plaintiffs from utilizing the community room at Emlen Arms to meet with other tenants and invited non-resident guests to discuss the tenants' housing problems. The allegations in the plaintiffs' verified complaint set forth the following sequence of events. On August 10, 1983, the plaintiffs informed the manager of Emlen Arms that they would hold a tenants' meeting that evening to discuss housing problems at Emlen Arms. The manager informed the plaintiffs that the meeting could not take place and that if such meeting was attempted, the police would be summoned to prevent it. Nevertheless, on the evening of August 10 a group of tenants did meet in the community room of Emlen Arms. Shortly after the meeting commenced, four to six PHA police appeared at the meeting room (together with some officers of the Philadelphia Police Department). Lieutenant Anderson of the PHA police ordered the tenants to disperse immediately, which they did. On August 12, 1983, counsel for plaintiffs sent a letter to the General Counsel of PHA requesting assurance that the tenants could utilize the community room in the future. In a letter dated August 15, 1983 General Counsel of PHA wrote to plaintiff's counsel and stated in pertinent part:

> Mr. Murphy is allowed to meet with any of the *other* tenants in the Community Room at Emlen Arms whenever he chooses. I am informed that the objection to the August 10th meeting was that there were several people present who were not tenants. The normal procedure is that Mr. Murphy set up the meeting through Ms. Barnes, President of the Tenant Council. If he cannot get the Tenant Council's approval, for some reason, then Mr. Murphy may call Mr. John Tatum at (215) 561-7946.
>
> At no time will Mr. Murphy be denied a meeting with *other tenants* of Emlen Arms.

(emphasis in original).

Plaintiff Eugene Murphy contacted Ms. Barnes to set up another meeting at Emlen Arms but she refused to acknowledge his request. Mr. Murphy's calls to the office of John Tatum, advising him of plaintiffs' desire to meet in the Emlen Arms community room on August 30, 1983, were not returned. On August 30, 1983 the manager of Emlen Arms informed Mr. Murphy that the plaintiffs could not meet in the community room. Nevertheless, the plaintiffs did meet in the community room that evening. Lieutenant Anderson of the PHA initially stopped the plaintiffs from meeting, but after examining a copy of the August 15, 1983 letter from PHA's General Counsel he permitted the meeting to continue. However, Lieutenant Anderson refused to permit a non-resident of Emlen Arms, Mark Paulmire of the Friends Weekend Work Camp Program, from attending the meeting. Mr. Paulmire, who operates an educational program for persons working with elderly and handicapped persons, had been invited by the plaintiffs to provide assistance to the tenants at their meeting.

Lieutenant Anderson stated that he was prohibited from permitting any persons other than Emlen Arms tenants to meet in the community room, and he prohibited Mr. Paulmire from attending the meeting.

After the plaintiffs' complaint and motion for a preliminary injunction was filed, the parties entered into negotiations with respect to the plaintiffs' claim for injunctive relief. After considerable negotiation, and following several conferences with this Court, the parties executed a Stipulation which was approved by this Court on March 5, 1984. The Stipulation provides that the defendants shall permit the plaintiffs to hold meetings of tenants in the Emlen Arms upon twenty-four hours notice where non-residents are expected to attend, and that the plaintiffs must notify the manager of Emlen Arms of the designated time of the meeting together with the identity of all non-residents expected to attend. In entering the Stipulation the defendants did not concede liability, and the issues of plaintiffs' damages, the defendants' counterclaim (for back rent), and the plaintiffs' right to attorneys' fees were expressly reserved.

■ Presently before the Court is the motion of Harold R. Berk, Esq. for an award of an attorney's fee, filed pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Mr. Berk seeks a total of $1740 for his representation of the plaintiffs in connection with their claim for injunctive relief. Although the plaintiffs' claim for damages is pending, the plaintiffs have advised Mr. Berk that they no longer desire his representation and it appears they now intend to proceed pro se in this matter. Since it is clear that a "prevailing party" can be awarded statutory attorney's fees in a civil rights action prior to the conclusion of the litigation, *N.A.A.C.P. v. Wilmington Medical Center, Inc., et al.,* 689 F.2d 1161, 1165 (3d Cir.1983), Mr. Berk's fee petition is properly before this Court. The defendants do not dispute the reasonableness or the amount of the fee requested by Mr. Berk. However, they do contend that any award of fees would be inappropriate in this case because the plaintiffs are not "prevailing parties" (with respect to their claims for injunctive relief) within the meaning of the statute. For the reasons that follow this Court has determined that the plaintiffs are "prevailing parties" with respect to their claims for injunctive relief, and that Mr. Berk is entitled to an attorney's fee in the amount requested.

■ Section 1988, 42 U.S.C. provides that in civil rights actions "The Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has stated that the standard for determining whether a plaintiff is a prevailing party under § 1988 is a "generous formulation" which is met by plaintiffs who succeed in achieving "some of the benefits the parties sought in bringing suit" and who have "acquired the primary relief sought." *Hensley v. Eckerhart,* 461 U.S. 424, 433 & n. 8, 103 S.Ct. 1933, 1939 & n. 8, 76 L.Ed.2d 40 (1983) (citations omitted). In order to be considered a prevailing party within the meaning of § 1988 a plaintiff need not obtain a formal judgment in his favor:

> [t]he fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiffs' rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights, through a consent judgment or without formally obtaining relief."

*Maher v. Gagne,* 448 U.S. 122, 131, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (citations omitted).

■ In assessing whether a plaintiff is a prevailing party in a civil rights action, the Third Circuit has directed that courts should not "give conclusive weight to the

form of the judgment" but rather should "look to the substance of the litigation's outcome." *Sullivan v. Commonwealth of Pennsylvania Department of Labor, et al.,* 663 F.2d 443, 448 (3d Cir.1981), quoting *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir. 1979), *cert. denied* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). The Third Circuit has declared that "[w]hether [a plaintiff] is entitled to a fees award should be determined by whether her case acted as a 'catalyst' for the vindication of her constitutional rights." *Sullivan,* 663 F.2d at 448–49, quoting *Staten v. Housing Authority,* 638 F.2d 599, 605 (3d Cir.1980). In summarizing its decisions on this issue the Court of Appeals has stated that "[i]t is settled law in this circuit that as long as the plaintiff achieves some of the benefits sought in initiating a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment, the plaintiff can be considered the prevailing party for the purposes of a fee award." *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 689 F.2d at 1166. Furthermore, "it is established law that plaintiffs must satisfy only two requirements in order to be considered the prevailing party for purposes of a fee award: the plaintiffs must essentially succeed in obtaining some relief on the merits of their claim, and the circumstances under which the plaintiffs obtain that relief must be causally linked to the prosecution of the complaint." *Id.* at 1171, citing *Sullivan,* 663 F.2d at 452. Thus "[t]he critical factor in determining causation is ... whether the relief was implemented as a result of plaintiff's *lawsuit.*" *N.A.A. C.P. v. Wilmington Medical Center, Inc.,* 689 F.2d at 161 (emphasis in original). Furthermore, the plaintiffs' lawsuit need not be the *sole* cause of the relief obtained. The Third Circuit has advised that

> [w]here there is more than one cause, the plaintiff is a prevailing party if the action was a *material factor* in bringing about the defendant's [cessation of arguably illegal conduct]. To hold otherwise would be inconsistent with the broad remedial purpose of § 1988 because in many cases causation will hinge on the

defendant's motivation. To require some stricter standard of causation would mean that the defendant could hide his true motivation behind what seems a plausible alternate justification.

*Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir.1980) (per curiam), *cert. denied* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981) (emphasis added). Finally, in addressing the issue of whether or not the relief obtained is causally linked to the institution of the plaintiffs' lawsuit, the Third Circuit has held that the courts are "bound to apply the most expansive definition of causation." *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 689 F.2d at 1169.

■ The defendants contend in their brief opposing the fee petition that the plaintiffs are not prevailing parties because they "obtained nothing more by the Stipulation than that which they possessed prior to the lawsuit." Defendants' Memorandum at 6. Although the defendants concede that the Stipulation was reached only after "considerable correspondence" between the parties' counsel, the defendants contend that the procedures embodied in the Stipulation governing the use of the Emlen Arms community room for meetings with non-resident guests were existing in some form prior to the filing of the complaint. Although defendants' counsel now asserts that the defendants' decision to institute the policies now embodied in the Stipulation (with respect to the inclusion of non-resident guests at tenant meetings) was reached "prior to and discrete from any action by the plaintiffs", nowhere is there any indication that these procedures were formally adopted, set forth in writing, or published or communicated in any way to the plaintiffs. The letter of defendants' General Counsel dated August 15, 1983 appears only to suggest a procedure by which the plaintiffs could obtain approval for meetings *"with other tenants"* (emphasis in original).

The defendants have filed no affidavits in support of their contention that the plaintiffs are not prevailing parties with

respect to the relief they obtained in the Stipulation. The uncontroverted allegations of plaintiff's verified complaint establish that the plaintiffs were barred by the defendants from meeting with other tenants on August 10, 1983, and that although counsel for PHA later advised plaintiffs' counsel that the plaintiffs would not be prohibited from meeting with other tenants if they followed applicable procedures, the PHA police barred the plaintiffs' invited non-resident guest from attending the tenants' meeting at Emlen Arms on August 30, 1983. In their complaint the plaintiffs sought to enjoin the defendants from excluding non-resident guests at Emlen Arms tenants meetings. The Stipulation executed by the parties establishes a procedure which does permit non-resident guests to attend tenant-sponsored meetings at Emlen Arms.

In *Morrison v. Ayoob,* 627 F.2d 669 (3d Cir.1980) (per curiam), *cert. denied* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), the plaintiffs' complaint that certain state district justices were violating criminal defendants' right to counsel was mooted when the justices stopped the allegedly unlawful conduct after the suit was filed. In opposing the plaintiffs' motion for attorneys' fees pursuant to § 1988 the defendants contended that the cause of their cessation of the complained-of conduct was not the filing of the suit. The district court determined that the plaintiffs were prevailing parties within the meaning of § 1988 because they had succeeded in obtaining the relief which they sought. In affirming the district court's "prevailing party" determination the Third Circuit, as noted above, held that where there may be more than one cause of the relief received the plaintiffs are entitled to fees "if the action was *a* material factor in bringing about the defendant's action." 627 F.2d at 671. The *Morrison* court noted that although the defendants were aware of the plaintiffs' complaints prior to the filing of the lawsuit, they did not take corrective action until after the suit was filed and counsel for both sides had conferred. The court observed that "[t]his sequence of events strongly suggests that the action was a material factor in bringing about the defendants' change of conduct." 627 F.2d at 672.

In the present case the plaintiffs' non-resident guest was barred by the defendants from attending tenant meetings prior to the filing of the suit, and it was not until the action was filed and counsel for the parties conferred that the defendants agreed to a formal, written procedure which permits non-resident guests to attend tenant meetings. Here, as in *Morrison,* the "sequence of events" clearly indicates that the filing of the action was "a material factor in bringing about the defendants' change of conduct", and this Court finds that the plaintiffs are "prevailing parties" (with respect to the injunctive relief which they sought) within the meaning of 42 U.S.C. § 1988.

■ As noted above, the defendants do not dispute the reasonableness or the amount of the requested fee. The initial estimate or "lodestar" of a reasonable attorney's fee is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Blum v. Stenson,* — U.S. —, —, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984). Reasonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community, and the determination of a reasonable hourly rate should be based upon the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at — U.S. — n. 11, 104 S.Ct. at 1547 n. 11. Mr. Berk's petition, accompanied by the appropriate supporting affidavits, requests a lodestar of $1740 based upon 17.4 hours of work multiplied by his customary rate of $100 per hour. This Court is well aware of Mr. Berk's considerable experience in the area of civil rights litigation, and has had occasion to observe the high quality of his representation of the plaintiffs in *Resident Advisory Board v. Rizzo,* 425 F.Supp. 987 (E.D.Pa.1976). The Court finds that his requested rate of $100 per

hour is reasonable, and the Court further finds that the 17.4 hours claimed by Mr. Berk were reasonably expended on the litigation. Mr. Berk has not requested any "multiplier" or upward adjustment of the lodestar figure of $1740.

For all the reasons set forth above the Court has determined that the plaintiffs are "prevailing parties" with respect to their claim for injunctive relief in this action, and that pursuant to 42 U.S.C. § 1988 Harold Berk, Esq. is entitled to an attorney's fee in the amount of $1740.